## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL
COALTION, WEST VIRGINIA
HIGHLANDS CONSERVANCY
and THE SIERRA CLUB,**

        **Plaintiffs,**

        **v.**                          **CIVIL ACTION NO.** 2:12-1173

**BOONE EAST DEVELOPMENT
COMPANY,**

        **Defendant.**

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### AND FOR CIVIL PENALTIES

### INTRODUCTION

1.      This is a citizen suit for declaratory and injunctive relief and civil penalties against Defendant Boone East Development Company ("Boone") for discharging pollutants in violation of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), from two unpermitted point sources on its property north of Cannelton in Kanawha and Fayette Counties, West Virginia.  These two point sources discharge into unnamed tributaries of Smithers Creek, which is a water of the United States.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (CWA citizen suit provision).

3.      On January 3 and February 10, 2012, Plaintiffs gave notice of the violations and their intent to file suit to Boone, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by

Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

4.     More than sixty days have passed since the notices were mailed.  EPA and/or

WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the

violations.  Moreover, neither EPA nor WVDEP commenced an administrative penalty action

under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the

violations prior to the issuance of the January 3 and February 10, 2012 notice letters.

5.     Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the

sources of the Clean Water Act violations are located in this District.

<u>**PARTIES**</u>

6.     Boone is a West Virginia corporation that owns the property where the violations

complained of in this action have occurred.

7.     Boone is a person within the meaning of § 502(5) of the Clean Water Act, 33

U.S.C. § 1362(5).

8.     Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization

incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has

approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots

organization dedicated to the improvement and preservation of the environment through

education, grassroots organizing, coalition building, leadership development, and media

outreach.  The Coalition has focused on water quality issues and is a leading source of

information about water pollution in West Virginia.

9.     Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization

incorporated in West Virginia.  It has approximately 2,000 members.  It works for the

conservation and wise management of West Virginia's natural resources.

10.     Plaintiff The Sierra Club is a nonprofit corporation incorporated in California,

2

with more than 600,000 members and supporters nationwide and approximately 2,000 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

11.    Plaintiffs have members, including, but limited to, Cindy Rank, Paige Delporto, and Vivian Stockman, who use, enjoy, and benefit from the water quality in Smithers Creek and the natural resources associated with that Creek.  They would like to recreate in areas downstream from the portion of the Creek into which Boone's point sources discharge pollutants harmful to aquatic life, including selenium, conductivity and its chemical constituents. Excessive amounts of these pollutants degrade the water quality of Smithers Creek and its tributaries, make the water aesthetically unpleasant and environmentally undesirable, and impair its suitability for aquatic life.  Because of this pollution, Plaintiffs' members refrain from and/or restrict their usage of Smithers Creek, its tributaries, and its associated natural resources.  As a result, the environmental, health, aesthetic, and recreational interests of these members are adversely affected by Boone's unpermitted discharges of these other pollutants into Smithers Creek.  If Boone's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed.  Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future unpermitted discharges by Boone.

12.    At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

13.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as an NPDES Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."

15.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a).

16.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).

17.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

18.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.   See 40 C.F.R. § 19.4.

19.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or

substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

20.     In 1970, the West Virginia Division of Energy issued Surface Mining Permit No. S-615-70C to Cannelton Industries, Inc. for a surface coal mine near Cannelton in Kanawha County.  This was West Virginia's first mountaintop removal mine.  It removed Bullpush Mountain.

21.     In 2005, this permit, renumbered as part of Permit No. S061570 (which covers a total of 2010 acres), was transferred to Jacks Branch Coal Company.

22.     WVDEP granted Phase 3 bond release for Permit No. S-615-70C on April 22, 2008.  All coal removal activities have ceased in that permitted area and the mine site has been reclaimed.

23.     Boone East controls and/or owns the previously mined and permitted area for Permit No. S-615-70C.

24.     On November 2, 2011 and January 27-28, 2012, water samples taken at two locations near this mine showed the following levels of selenium and conductivity:

| Date | Sample Location | Location Coordinates | Selenium (ug/l) | Conductivity (µS/cm) |
|---|---|---|---|---|
| November 2, 2011 | SC-4 | 38°12'30.07"N 81°17'13.75"W | 15.66 | 1160 |
| November 2, 2011 | SC-7 | 38°12'43.92"N 81°16'36.41"W | 10.66 | 444 |
| January 27, 2012 | SC-4-2 | 38°12'30.63"N 81°17'14.37"W | 14.74 | 1186 |
| January 28, 2012 | SC-7-2b | 38°12'43.49"N 81°16'36.40"W | 11.21 | 621 |

25.     The first location is at SC-4 and SC-4-2 and is in Kanawha County near and/or upstream of former Outlet 003 of WV/NPDES Permit No. WV0093912.  The coordinates of Outlet 003 are listed in that permit as 38°12'04"N, 81°17'45"W.

26.     The second location is at SC-7 and SC-7-2b and is in Fayette County upstream of former Outlet 002 of WV/NPDES Permit No. WV0093912.  The coordinates of Outlet 002 are listed in that permit as 38°12'20"N, 81°16'15"W.

27.     Each of these two locations in paragraphs 25 and 26 above is a seep or discrete fissure that discharges water and is on the slope below the mine associated with Permit No. S-615-70C.

28.     The water discharged from each of these two locations flows directly or indirectly into Smithers Creek, which is a tributary in the Upper Kanawha Watershed.

29.     West Virginia has listed Smithers Creek on WVDEP's 2010 § 303(d) List under the CWA as impaired for selenium.

30.     Selenium is a toxic pollutant under the CWA. 40 C.F.R. § 401.15.

31.     West Virginia has established a chronic water quality standard of 5 ug/L for selenium.  47 C.S.R. § 2, Appendix E, Table 1.

32.     According to EPA, the chemical constituents that are likely to cause elevated conductivity at Central Appalachian coal mining sites like the site in this action are $HCO_3^-$, $SO_4^{2-}$, $Ca^{2+}$, and $Mg^{2+}$.

33.     At the time of each sampling, the discharges were untreated and therefore the discharges of selenium, conductivity, and its chemical constituents are likely to continue unabated.

## CLAIM

34.     Plaintiffs incorporate by reference the allegations in paragraphs 1-33 above.

35.     Section 301 of the CWA prohibits the addition of any pollutant to a water of the U.S. waters from any point source without a permit.  33 U.S.C. § 1311.

36.     Boone has discharged and added pollutants, including selenium and conductivity

6

(including its constituent chemical ions identified above), from two locations on its property to tributaries of Smithers Creek.

37.     Each of these two locations is a point source within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

38.     Smithers Creek and its tributaries are waters of the United States within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

39.     At the time of these discharges, and continuing to the present, Boone has not had a permit under the CWA to discharge pollutants from these two locations.

40.     Boone's unpermitted discharges are continuing and/or intermittent.

41.     Because of these unpermitted discharges, Boone is in violation of the prohibition in the CWA on discharges of pollutants without a permit.  33 U.S.C § 1311.  This prohibition is enforceable pursuant to Sections 505(a)(1) and 505(f)(1) of the CWA, 33 U.S.C. §§ 1365(a)(1), 1365(f)(1).

42.     Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. § 1319(d) and 1365, Boone is liable for civil penalties of up to $37,500 per day for its unpermitted discharges.

43.     Boone is also subject to an injunction under the CWA ordering it to cease its unpermitted discharges.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1.      Declaring that Boone has violated and is in continuing violation of the CWA;

2.      Enjoining Boone from managing its property in such a manner as will result in further unpermitted discharges of pollutants from its property;

3.      Assessing appropriate civil penalties up to $37,500 per day against Boone for each CWA violation;

4.      Ordering Boone to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

5.      Awarding Plaintiffs their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

6.      Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Joseph M. Lovett**
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006

Counsel for Plaintiffs